[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-12368

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 5, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00129-CV-JTC-3

BEVERLY GISH,
Administratrix for the Estate of
JESSE BRANDON GISH,

Plaintiff-Appellant,

versus

JIMMY THOMAS,
Individually and in his official capacity as
Sheriff of Pike County, Georgia,
WILLIAM WALLACE GILMER,
Individually and in his official capacity as
Deputy Sheriff of Pike County, Georgia,
PIKE COUNTY, GEORGIA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 5, 2008)**

Before HULL and PRYOR, Circuit Judges, and MOORE,[*] District Judge.

PRYOR, Circuit Judge:

This appeal about an unusual suicide by a prisoner presents a fact-intensive issue: whether an officer responsible for transporting a pretrial detainee in a police car and aware that the detainee is a strong suicide risk is deliberately indifferent to that risk when the officer leaves a loaded firearm in the front seat of the car while the detainee is in the rear seat in handcuffs and behind a security screen that the officer erroneously believes is locked. Beverly Gish filed a complaint that alleged that Sheriff Jimmy Thomas, Deputy Sheriff William Gilmer, and Pike County, Georgia, violated the civil rights of her son, Brandon Gish, who committed suicide in the backseat of Gilmer's police car. The district court entered summary judgment in favor of Thomas, Gilmer, and the County. Beverly Gish argues on appeal that there are genuine issues of material fact about these matters: (1) whether Gilmer was deliberately indifferent to Brandon Gish's civil right to be protected from self-inflicted injury; (2) whether Pike County Sheriff Jimmy Thomas was deliberately indifferent to the need to train deputies on the transport of suicidal detainees; and (3) whether a policy of Pike County caused the

---

[*] Honorable K. Michael Moore, United States District Judge for the Southern District of Florida, sitting by designation.

2

constitutional violation. Because Beverly Gish failed to present evidence that Deputy Gilmer was deliberately indifferent to a known risk that Brandon Gish was able to obtain the firearm, we affirm the summary judgment in favor of Thomas, Gilmer, and the County.

## I. BACKGROUND

Brandon Gish was arrested on December 10, 2003, and was held at the Pike County jail to await trial. He recorded on a jail form that he had previously attempted suicide and had considered suicide as recently as December 8, 2003. Brandon Gish's grandmother called the jail three times to warn jail officials that Brandon Gish might be suicidal. Because the Pike County jail did not have the staff or resources to monitor suicidal detainees, Pike County Deputy Sheriff William Gilmer transported Brandon Gish to the Clayton County jail. Gilmer signed a transfer of custody form that stated that Brandon Gish had made statements about suicide, was bipolar, and refused to take his medications.

On December 12, 2003, Gilmer transported Brandon Gish from the Clayton County jail to the Pike County Magistrate Court for a hearing. The police car that was used to transport Brandon Gish had a partition with a sliding plexiglass security screen that separated the front compartment from the rear compartment. When the security screen was unlocked, it ordinarily was open approximately one

3

inch.  After the hearing, Gilmer transported Brandon Gish back to the Clayton County jail with his hands handcuffed in front of him.

Because the Clayton County jail did not allow guns inside the facility, Gilmer left his gun on the front passenger seat when he left the vehicle.  Gilmer thought the screen was locked.  Gilmer had not checked the screen for five or six days, but the screen was locked when he last checked it.  While Gilmer was outside the car, Brandon Gish obtained the gun and committed suicide.

The Sheriff of Pike County requires his deputies to attend a training course accredited by the Georgia Peace Officer Standards and Training Council.  The training course covers gun safety.  When Brandon Gish committed suicide, there were no Pike County policies about checking the security screen, handcuffing inmates, or securing weapons.

Beverly Gish filed a complaint that alleged that Gilmer was deliberately indifferent to Brandon Gish's due process right to be protected from self-inflicted injury, Sheriff Thomas was deliberately indifferent to the need to train deputies on the transport of suicidal detainees, and a policy of Pike County caused the constitutional violation.  42 U.S.C. § 1983.  The district court granted summary judgment against Beverly Gish's complaint.

## II.  STANDARD OF REVIEW

We review a grant of summary judgment by a district court de novo. Cruz v. Publix Super Mkts., Inc., 428 F.3d 1379, 1382 (11th Cir. 2005). We apply the same legal standards as the district court and view all facts and reasonable inferences in the light most favorable to the nonmoving party. Id. (quoting Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1203 (11th Cir. 2001)).

## III. DISCUSSION

The Due Process Clause of the Fourteenth Amendment guarantees pretrial detainees the right to basic necessities that the Eighth Amendment guarantees convicted persons. Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir. 2005) (quoting Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994)). Pretrial detainees and other prisoners have the right "to receive medical treatment for illness and injuries, which encompasses a right to psychiatric and mental health care, and a right to be protected from self-inflicted injuries, including suicide." Id. (quoting Belcher, 30 F.3d at 1396 (citations omitted)) (internal quotation marks omitted). A prison official may be held liable for failing to prevent harm to a prisoner if he is deliberately indifferent to the prisoner's health or safety. Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994).

To establish liability for a prisoner's suicide under section 1983, "the

plaintiff must show that the jail official displayed 'deliberate indifference' to the prisoner's taking of his own life." Cook, 402 F.3d at 1115 (quoting Cagle v. Sutherland, 334 F.3d 980, 986 (11th Cir. 2003) (per curiam)) (internal quotation mark omitted). The plaintiff must prove that the official had subjective knowledge of a risk of serious harm and disregarded that risk by conduct that constituted more than mere negligence. Snow ex rel. Snow v. City of Citronelle, Ala., 420 F.3d 1262, 1268 (11th Cir. 2005) (quoting Cook, 402 F.3d at 1115). "[D]eliberate indifference requires that the defendant deliberately disregard 'a strong likelihood rather than a mere possibility that the self-infliction of harm will occur.'" Cook, 402 F.3d at 1115 (quoting Cagle, 334 F.3d at 986) (emphasis omitted). "[T]he mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1540 (11th Cir. 1994) (en banc).

Beverly Gish argues that Deputy Gilmer was deliberately indifferent to Brandon Gish's suicide because, regardless of whether Gilmer was aware that the security screen might have been unlocked, Gilmer was aware of a strong likelihood that Brandon Gish would try to commit suicide by any available means. We disagree. To be deliberately indifferent to a strong likelihood that the prisoner will commit suicide, the official must be subjectively aware that the combination

6

of the prisoner's suicidal tendencies and the feasibility of suicide in the context of the prisoner's surroundings creates a strong likelihood that the prisoner will commit suicide. In Cagle v. Sutherland, we ruled, for example, that a jailer was not deliberately indifferent to a detainee's risk of suicide when the jailer observed the detainee every 15 minutes and the detainee had been stripped of his belt, shoelaces, the contents of his pockets, and all implements that could foreseeably be used by him to commit suicide. 334 F.3d at 984, 989. If Beverly Gish cannot establish that Gilmer was aware that the security screen might have been unlocked, she cannot establish that Gilmer deliberately disregarded a strong likelihood that Brandon Gish would commit suicide.

Although Gilmer was aware that Brandon Gish was suicidal, Gilmer was entitled to summary judgment in his favor because Beverly Gish provided no evidence that Gilmer was aware that the security screen might have been unlocked. When the security screen was unlocked, it ordinarily was open approximately one inch. Gilmer testified that, although he did not observe whether the screen was open on the day of Brandon Gish's suicide, he thought that the security screen was locked. The screen was locked five or six days earlier when Gilmer last checked it, and Gilmer had no reason to believe that someone had opened the security screen since then. Beverly Gish offers no contrary

7

evidence that Gilmer was subjectively aware that the security screen might have been unlocked. She offers no more than evidence of Gilmer's negligence. The district court correctly concluded that Gilmer was not deliberately indifferent to a known risk that Brandon Gish would commit suicide.

Sheriff Thomas and Pike County were also entitled to summary judgment. There can be no supervisory liability for Brandon Gish's suicide if there was no underlying constitutional violation by Deputy Gilmer. See Hicks v. Moore, 422 F.3d 1246, 1253 (11th Cir. 2005). Without an underlying violation of Brandon Gish's constitutional rights, Thomas cannot be liable in his individual or official capacity for a failure to train Gilmer and Pike County cannot be liable on the ground that its policy caused a constitutional violation.

## IV. CONCLUSION

The summary judgment against Beverly Gish's complaint is **AFFIRMED**.