[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

------------------------------------------

No. 08-12661
Non-Argument Calendar

------------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 13, 2009
THOMAS K. KAHN
CLERK

D.C. Docket No. 07-00145-CV-HLM-4

LINDA FOWLER,
Individually and as personal
representative of the estate of
Michael Eugene Ledford, deceased,

                                        Plaintiff-Appellant,

        versus

CHATTOOGA COUNTY, GEORGIA,
SHERIFF RALPH KELLETT, JR.,
SARGEANT ALAN BOYD,

                                        Defendants-Appellees.

------------------------------------------------------------------
Appeal from the United States District Court
for the Northern District of Georgia
------------------------------------------------------------------
(January 13, 2009)

Before EDMONDSON, Chief Judge, BIRCH and PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Linda Fowler appeals the grant of summary judgment in favor of Defendants in Plaintiff's section 1983 suit, 41 U.S.C. § 1983. No reversible error has been shown; we affirm.

Plaintiff, sole surviving parent of Michael Ledford and administrator of his estate, brought this action against Sgt. Boyd and Sheriff Kellett of the Chattooga County Sheriff Department (in their individual and official capacities) and against Chattooga County claiming the civil rights of Ledford were violated when Ledford committed suicide while an inmate in the Chattooga County Jail ("Jail").[1] In a thoughtful 77-page opinion, the district court concluded that no genuine dispute existed on Plaintiff's § 1983 claims: Plaintiff failed to establish a deliberate indifference claim against Boyd; supervisory liability of Sheriff Kellett; or liability of Chattooga County based on a policy or custom or failure to train theory. We agree. We will write briefly.

We review a district court's grant of summary judgment de novo. Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000). For summary judgment

---

[1]Ledford was a convicted prisoner; Plaintiff's deliberate indifference claim arises under the Eighth Amendment's cruel and unusual clause.

purposes, we view all facts and draw all reasonable inferences in the light most favorable to Plaintiff, the non-movant; the true facts might be different from what we set out here. See Mangieri v. DCH Healthcare Authority, 304 F.3d 1072, 1073 n.2 (11th Cir. 2002).

Michael Ledford was no stranger to the Jail; he had been incarcerated there some 23 times. Ledford's stay at the Jail that ended with his suicide on 27 August 2005 began on 17 May 2005 with his arrest on charges of making terroristic threats. Ledford remained in Jail from his arrest, through his trial, and after his conviction.

Sgt. Boyd was familiar with Ledford. An incident occurred on 1 July 2005 where Sgt. Boyd restrained Ledford after he observed Ledford with a sheet and concluded Ledford was a threat to hang himself. Ledford was placed in administrative segregation. Ledford stated that he wanted to kill himself. Sgt. Boyd did not place Ledford on suicide watch. A nurse was summoned; Sgt. Boyd was present while the nurse spoke with Ledford. Ledford told the nurse that he wanted to hang himself so that he could get his way; he told the nurse, while laughing, that he threatened to harm himself because that was how he got his way and got his mother to give him what he wanted. Although Ledford requested that

3

he be returned to the general population, the nurse directed that he be observed for suicidal ideations and recommended he have a mental health examination.

Ledford was returned to the general population on 5 July 2005; he informed the nurse that he was not going to play games anymore. Ledford was examined by a psychologist on 14 July 2005. The psychologist noted no suicidal ideations; Ledford remained in the general population.

Before the 1 July 2005 incident, Sgt. Boyd knew of no threats of suicide or attempts at suicide made by Ledford. Sgt. Boyd had at some earlier date observed Ledford in a paper gown: garb issued to an inmate who had threatened to harm himself. But Sgt. Boyd testified that he did not believe Ledford was suicidal after the 1 July incident; he thought that was Michael Ledford just being Michael Ledford.

On 26 August 2005, Ledford was placed in administrative segregation for assaulting another inmate. According to his uncle, Jerry Crowe, Ledford called him on 26 August or 27 August and said: "Uncle Jerry, I love you. If I never see you again, I love you." No statement was made by Ledford that he was going to kill himself, attempt suicide, or otherwise harm himself. Nonetheless Crowe was concerned and claims that he called the Jail and spoke with Sgt. Boyd to make sure Ledford was in a safe place. Crowe was told that Ledford was in "a solitary

4

area where he could not hurt hisself [sic]." Crowe also went to the Jail to confirm that Ledford was in a good, safe place. Crowe was again told by Sgt. Boyd that Ledford was in a safe place.[2]

On 27 August 2005, the day Ledford committed suicide, he was in administrative segregation; he was not then on suicide watch. Inmates in administrative segregation -- unlike inmates on suicide watch -- are not stripped of their bedding materials and clothing. Inmates in administrative segregation are checked more frequently than inmates housed in the general population: Jail officers check on these inmates each time they walk through the booking area of the Jail; inmates placed on suicide watch at the Jail are checked every fifteen minutes and can be observed at any time through a glass door. Jail records indicate that no problems were apparent with Ledford at cell checks conducted at 6:20 p.m., 6:45 p.m., and 7:05 p.m. on 27 August. At about 7:25 p.m., Jail officers discovered Ledford hanging from a window frame.

Plaintiff argues that the evidence raised a jury question; a jury could find that Sgt. Boyd knew about the 1 July 2005 suicide incident involving Ledford, knew that Ledford had made a statement to his uncle suggesting that he was

---

[2]Sgt. Boyd disputes Crowe's account. For purposes of summary judgment only, we accept Crowe's rendition of the facts.

suicidal, and -- with deliberate indifference to a known risk of suicide -- Sgt. Boyd failed to place Ledford on suicide watch.  As the district court concluded, however, these facts are insufficient as a matter of law to support a deliberate indifference claim.

As we have said, to establish liability for a prisoner's suicide under section 1983, the "plaintiff must prove that the official had subjective knowledge of a risk of serious harm and disregarded that risk by conduct that constituted more than mere negligence."  Gish v.  Thomas, 516 F.3d 952, 954 (11th Cir.  2008) (citation omitted).  More is required to be shown than "the mere opportunity for suicide." Tittle v.  Jefferson County Commission, 10 F.3d 1535, 1540 (11th Cir.  1994). "[I]n a prison suicide case, deliberate indifference requires that the defendant deliberately disregard *a strong likelihood* rather than a mere possibility that the self-infliction of harm will occur."  Cook ex rel.  Estate of Tessier v.  Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir.  1994) (internal quotation and citation omitted) (emphasis in original).  And "[t]o be deliberately indifferent to a strong likelihood that the prisoner will commit suicide, the official must be subjectively aware that the *combination* of the prisoner's suicidal tendencies and the feasibility of suicide in the context of the prisoner's surroundings creates a

strong likelihood that the prisoner will commit suicide." Gish, 516 F.3d at 954-55 (emphasis in original).

Viewing the record and all reasonable inferences in the light most favorable to Plaintiff, Plaintiff's evidence fails to create a material issue of fact that Sgt. Boyd was deliberately indifferent to a "strong likelihood" -- "more than a mere possibility" -- that Ledford was such a threat to himself that additional measures of protection were required. The 1 July 2005 incident of which Sgt. Boyd was aware was, by 27 August, remote in time; in the meantime, Ledford had been examined by professionals and no suicidal ideations were found. That Sgt. Boyd had a recollection of having seen Ledford at some unknown earlier time in a paper gown adds little to establish "a strong likelihood." Ledford's conversation with his uncle at least is temporally significant. But Ledford threatened no harm to himself in the statement made to his uncle; and Crowe expressed interest only in assuring that Ledford was in a safe place where he could not hurt himself. At most, Ledford's telephone call to Crowe, together with Crowe's conversations with Sgt. Boyd, allows an inference that Sgt. Boyd was aware that Ledford entertained some thought of suicide. The record allows an inference of no more than "a mere possibility" of a suicide attempt.

Sgt. Boyd knew -- by Ledford's own admission to medical personnel -- that Ledford used idle threats of suicide to get his way. Sgt. Boyd also knew that Ledford's placement in administrative confinement allowed considerable monitoring, more than would otherwise be the norm in the general prison population. Whether Sgt.Boyd's assessment of the situation was negligent, we do not say. But as the district court noted correctly, negligence will not support an Eighth Amendment claim. See Farmer v. Brennan, 114 S.Ct. 1970, 1979 (1994) ("an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."). See also, McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) (more than negligence required to establish deliberate indifference).

Summary judgment was also granted properly in favor of Sheriff Kellett and Chattooga County. No supervisory liability for Ledford's suicide can exist absent an underlying constitutional violation by Sgt. Boyd. See Gish, 516 F.3d at 955. And without an underlying constitutional violation, (i) Sheriff Kellett cannot be liable in his individual or official capacities on failure to train or policy

8

implementation theories; and (ii) Chattooga County cannot be liable on the ground that its policy caused a constitutional violation.[3]

AFFIRMED.

---

[3]Because we conclude that no constitutional violation has been shown, no need exists to consider the applicability of qualified immunity.