[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 19, 2011
JOHN LEY
CLERK

No. 09-16472
Non-Argument Calendar
_____

D.C. Docket No. 07-00008-CV-S

EDDIE IRA SANDERS, SR.,
as administrator of the estate
of Eddie Ira Sanders, Jr. deceased,

                                                            Plaintiff-Appellant,

versus

CITY OF DOTHAN,
MAURICE EGGLESTON,
Officer, in his individual capacity,

                                                            Defendants-Appellees,

JOHN POWELL, in his individual
and official capacity as Chief of
Police for the City of Dothan, et al.,

                                                            Defendants.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(January 19, 2011)

Before EDMONDSON, CARNES, and MARTIN, Circuit Judges.

PER CURIAM:

This case arises out of the death of Eddie Ira Sanders Jr. (Sanders) from acute cocaine intoxication after he lost consciousness while being transported in the back of a police car following his arrest. Eddie Sanders Sr. (Plaintiff), the administrator of Sanders' estate, filed suit under 42 U.S.C. § 1983 contending that Officer Maurice Eggleston, who arrested and transported Sanders, violated Sanders' constitutional rights. Specifically, Plaintiff argues that Eggleston (1) was deliberately indifferent to Sanders' Fourteenth Amendment rights when he took Sanders to the police station instead of the hospital, and (2) used excessive force in violation of the Fourth Amendment when he tasered Sanders.[1] The district

_____

[1] To the extent that Plaintiff had a claim against the City of Dothan for deliberate indifference to Sanders' Fourteenth Amendment rights it is abandoned because Plaintiff's argument focuses exclusively on Eggleston and only mentions the City of Dothan in passing. See United States v. Jernigan, 341 F.3d 1273, 1283 n. 8 (11th Cir. 2003) ("Under our caselaw, a party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. Otherwise, the issue—even if properly preserved at trial—will be considered abandoned."). Additionally, to the extent that Plaintiff argues a claim against the City of Dothan for the use of excessive force, he failed to preserve that claim by raising it in the district court. See Crawford

2

court granted on qualified immunity grounds Eggleston's summary judgment motion on both counts. This is Plaintiff's appeal.

## I.

The district court adequately set forth the facts of this case. Sanders v. City of Dothan, 671 F. Supp. 2d 1263 (M.D. Ala. 2009). For purposes of this appeal, we accept the district court's factfindings, supplementing them with additional evidentiary findings of our own from the record where necessary. See Cottrell v. Caldwell, 85 F.3d 1480, 1486 (11th Cir. 1996) ("[W]e have discretion to accept the district court's findings, if they are adequate."). Viewing the evidence in the light most favorable to the plaintiff, the district court found:

> On the evening of August 24, 2005, Eggleston, a police officer assigned to the Dothan Police Department's patrol division, attempted to pull over Sanders Jr. for driving a car with a burnt-out tag light. But Sanders Jr. did not stop, so Eggleston turned on his patrol car's emergency lights and siren and gave chase. After a two-minute pursuit, in which Sanders Jr. violated multiple traffic laws and almost caused a collision, Sanders Jr. finally pulled his car over to the side of the road.
>
> Eggleston parked, exited his patrol car, and started to walk toward Sanders Jr.'s car. But Sanders Jr., a large man who stood over 6 feet tall and weighed more than 400 pounds, jumped out of his car as well. Eggleston ordered Sanders Jr. to show his hands and get on the ground. Sanders Jr. did not get on the ground. Instead, he turned around, went back to his car, knelt down in front of the drivers-side door, and reached into the car. After several seconds, Sanders Jr. put his hands above his head, stood back up,

v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004).

3

and turned around to face Eggleston.  He turned his back on Eggleston for a second time and, after a few seconds, put his hands on top of his car.  Sanders Jr. then turned to face Eggleston, took his hands off of the top of his car, and started to walk towards Eggleston.  Because Eggleston did not know what Sanders Jr. had reached for in the car, he immediately retreated behind his patrol car, drew his firearm, and again ordered Sanders Jr. to get on the ground.  This time, Sanders Jr. complied, and after switching out the firearm for a taser, Eggleston handcuffed Sanders Jr. in front of the patrol car.

Eggleston then examined the inside of Sanders Jr.'s car and noticed a substance that he suspected was cocaine.  After radioing for a K-9 unit to come to the scene to investigate, Eggleston returned to Sanders Jr. and helped him to his feet.  Eggleston asked Sanders Jr. if he had any weapons or drugs on his person.  Sanders Jr. said he did not.  Eggleston asked him if he had any weapons or drugs in his car.  Again, he said he did not.  During this colloquy, Sanders Jr. talked normally and did not appear to have anything in his mouth.  Eggleston also conducted a pat-down search before putting Sanders Jr. in the back of the patrol car.  Eggleston did not find any weapons or drugs on him.

Other police officers arrived on the scene.  They too suspected that the substance in Sanders Jr.'s car was "rock" cocaine.  One of these officers, Ronald Hall, leaned into Eggleston's patrol car to interrogate Sanders Jr.  During the interrogation, Hall noticed that Sanders Jr. had several white flakes in his beard, and he pointed them out to Eggleston.  Both officers knew from experience that suspects often conceal contraband and other evidence in their mouths.  Consequently, both Hall and Eggleston ordered Sanders Jr. to open his mouth several times.  Sanders Jr. opened his mouth, but he refused to give either officer an unobstructed look inside.  Each time, he either refused to lift his tongue, looked down, or turned his head away from the officers.

Hall then retrieved a drug swab from his patrol car and wiped off some of the white flakes from Sanders Jr.'s beard.  He took them back to his patrol car to test them.  In the meantime, Eggleston, growing impatient with Sanders Jr.'s continued disobedience, [and based Eggleston's belief that

4

Sanders Jr. "attempted" to swallow something, he] leaned into the patrol car, drew his taser, removed the taser cartridge containing the probes, and told Sanders Jr. that if he did not comply with the order to open his mouth, he would use the taser on him. Still, Sanders Jr. refused to cooperate, and after giving Sanders Jr. several more warnings and ample time to comply, Eggleston used his taser on Sanders Jr. in drive-stun mode for approximately one to two seconds. Sanders Jr. immediately opened his mouth and lifted his tongue so that Eggleston could see inside. Eggleston did not see anything in Sanders Jr.'s mouth.

Hall reported back that the white flakes in Sanders Jr.'s beard had tested positive for cocaine. The officers asked Sanders Jr. if [he] had swallowed cocaine. He denied swallowing cocaine. The officers again asked Sanders Jr. if he had swallowed cocaine, pointing out that they needed to know for his safety and because they would need to take him to get his stomach pumped if he had swallowed cocaine. Sanders Jr. denied swallowing cocaine for a second time. The officers tried again, this time telling Sanders Jr. that they knew he had swallowed cocaine and that they were going to take him to get his stomach pumped. Sanders Jr. denied swallowing cocaine for a third time, and he pleaded with the officers not to take him to get his stomach pumped. By then, a K-9 unit had arrived on the scene and identified Sanders Jr.'s car as containing illicit drugs. Eggleston and Hall discussed whether it would be a good idea to take Sanders Jr. to the hospital to get his stomach pumped because they did not know how much cocaine he had swallowed. They never reached a decision.

Eggleston went back to Sanders Jr. and asked him several routine questions in order to fill out a few police reports. All of the officers on the scene who interacted with Sanders Jr. agree that he showed no signs of impairment or intoxication. His eyes were not dilated, his speech was not slurred, and he did not appear to be agitated. He was alert, "oriented," and able to provide identity and other basic information to Eggleston, including locations, dates, and numbers. He did not complain of medical problems, show signs of medical distress, or request medical attention or treatment.

Therefore, rather than take Sanders Jr. to the hospital to get his stomach pumped, Eggleston drove Sanders Jr. the two blocks to the Dothan City Jail

5

for booking. About one hour had passed from the time Eggleston first stopped Sanders Jr. to the time Eggleston drove Sanders Jr. to the jail. During the short drive to the jail, Eggleston and Sanders Jr. were talking to each other, and Eggleston did not think that anything was wrong. But when they arrived at the jail's sally port, Eggleston noticed that Sanders Jr. was dazed and appeared to be in some kind of medical distress. Eggleston told the jail sergeant to call the paramedics, moved Sanders Jr. out of the patrol car, and took off the handcuffs. When the paramedics arrived about seven to ten minutes later, Eggleston informed them that he suspected that Sanders Jr. had taken drugs. The paramedics then transported Sanders Jr. to the hospital, where he died a few days later. The autopsy reports that the cause of Sanders Jr.'s death was "acute cocaine intoxication."

Sanders, 671 F. Supp. 2d at 1265–67 (footnotes omitted).

II.

We review de novo the district court's grant of summary judgment. See Cambell v. Sikes, 169 F.3d 1353, 1361 (11th Cir. 1999). "We apply the same legal standards as the district court and view all facts and reasonable inferences in the light most favorable to the nonmoving party." Gish v. Thomas, 516 F.3d 952, 954 (11th Cir. 2008).

A.

Plaintiff contends that Eggleston violated Sanders' Fourteenth Amendment rights by acting with deliberate indifference to Sanders' serious medical condition while he was in custody. "To prevail, Plaintiff must prove both an objectively serious medical need and that a defendant acted with deliberate indifference to that

6

need." Burnette v. Taylor, 533 F.3d 1325, 1330 (11th Cir. 2008). "This Court has defined a 'serious medical need' as one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." Id. (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)). Because Plaintiff does not allege that Sanders was ever seen by a physician, he must establish that Sanders' medical need was so obvious that a lay person in Eggleston's position would recognize the need for treatment. Id.

To establish deliberate indifference, Plaintiff must show that Eggleston had "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Bozeman, 422 F.3d at 1272 (11th Cir. 2005) (alterations omitted). He must show that Eggleston "was both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also have drawn the inference." Burnette, 533 F.3d at 1330 (citations, quotation marks, and alterations omitted). "[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." Id. at 1331.

Plaintiff has failed to provide evidence that Eggleston was aware that Sanders was at substantial risk of serious harm due to a serious medical need. Even if Eggleston was aware that Sanders had swallowed some amount of cocaine,

7

there is no evidence that he was aware that Sanders had swallowed an amount large enough to put him at serious risk of harm. See id. at 1333 ("The Constitution does not require an arresting police officer or jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or alcohol."). Plaintiff argues that Eggleston's threat that he would have Sanders' stomach pumped provides such evidence. This statement—to which Sanders responded by denying he had swallowed cocaine and pleading not to have his stomach pumped—does not show that Eggleston was aware that Sanders had swallowed enough cocaine to put him at serious risk of harm. See id. Rather, the evidence, in the light most favorable to the Plaintiff, shows that Eggleston was not aware that Sanders was at substantial risk of harm; not only did Sanders repeatedly say he had not swallowed any drugs and that he did not want to be taken to the hospital, but he was also alert, talked normally, responded to questions by providing basic personal information, did not complain of any medical problems, and had no other signs of being impaired or intoxicated. We add that it is by no means clear that in the face of Sanders' denials and apparently normal behavior Eggleston could have had Sanders' stomach pumped against his will, even if Eggleston had attempted to do so. Plaintiff simply has not met his burden of showing that there is a general

issue of material fact about whether Eggleston was deliberately indifferent to Sanders' serious medical need.

B.

Plaintiff also contends that Eggleston violated Sanders' Fourth Amendment rights by using excessive force when Eggleston tasered Sanders. "Qualified immunity protects municipal officers from liability in § 1983 actions as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lewis v. City of West Palm Beach, Florida, 561 F.3d 1288, 1291 (11th Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982)). "To receive qualified immunity, the officer must first show that he acted within his discretionary authority." It is undisputed that Eggleston was acting within his discretionary authority.

The burden then shifts to Plaintiff to show that qualified immunity should not apply. Id. Even if Plaintiff can show that Eggleston's actions amounted to a constitutional violation, "if the violated right was not clearly established, qualified immunity still applies." Id. "A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle

9

within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." Id. at 1291–92 (citations omitted).

Plaintiff argues that because Sanders was handcuffed and in the back of the police car, Eggleston violated a clearly established constitutional right by tasering him. However, none of the ways of defeating qualified immunity apply here. There is no case law with facts indistinguishable from the present case clearly establishing a constitutional right not to be tasered in these circumstances. Plaintiff does not dispute that Eggleston tasered Sanders in furtherance of the legitimate law-enforcement activity of searching for contraband in Sanders' mouth to prevent him from possibly destroying it by swallowing the contraband. It is not clearly established that a police officer is prohibited from momentarily tasering an uncooperative handcuffed arrestee who—after multiple warnings—refuses to comply with that justifiable law-enforcement objective. This law-enforcement conduct is not so clearly in violation of constitutional rights that qualified immunity can be denied without a decision on point. Because the right that Plaintiff alleged that Eggleston violated is not clearly established, Eggleston is entitled to qualified immunity on the claim of excessive force.

**AFFIRMED.**