[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12075
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 8, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:07-cv-22617-UU

CRAIG WILLIAMS,

Plaintiff-Appellee,

versus

JEFF SCOTT, Officer,
HUMBERTO JIMENEZ, Officer,

Defendants-Appellants,

PATRICK BYRD, Officer, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 8, 2011)

Before TJOFLAT, CARNES and COX, Circuit Judges.

PER CURIAM:

Craig Williams ("Williams") filed a pro se 42 U.S.C. § 1983 complaint against officers Jeff Scott ("Scott") and Humberto Jimenez ("Jimenez") in their individual capacities. Scott and Jimenez filed a motion for summary judgment based on the defense of qualified immunity. Adopting the magistrate judge's report and recommendation, the district court denied Scott and Jimenez's motion for summary judgment. The court found that genuine issues of material fact exist as to whether Scott used excessive force in violation of the Fourteenth Amendment to the United States Constitution. The court also found a genuine issue of material fact as to whether Jimenez violated the Fourteenth Amendment by failing to intervene when Officer Patrick Byrd used excessive force.[1] We reverse the denial of qualified immunity as to Scott and affirm as to Jimenez.

A district court's denial of summary judgment based on qualified immunity is reviewed de novo. *Tinker v. Beasley*, 429 F.3d 1324, 1326 (11th Cir. 2005). "We apply the same legal standards as the district court and view all facts and reasonable inferences in the light most favorable to the nonmoving party." *Gish v. Thomas*, 516 F.3d 952, 954 (11th Cir. 2008) (citation omitted). We accordingly state the facts in the light most favorable to Williams, the non-moving party.

---

[1] Williams sued Byrd in his individual capacity, but Byrd has since died from causes unrelated to this case. He is not a party to this appeal. Other co-defendants named in the Complaint have since been voluntarily dismissed by Williams.

In October 2004, Williams, a detainee housed in the Florida Civil Commitment Center in Arcadia, Florida, was being transported by state correctional officers to a Miami-Dade County courthouse. To enter the courthouse, Williams first had to walk through the rear lobby of the Miami-Dade County Pretrial Detention Center. After Williams entered the Detention Center, Scott and Byrd noticed that Williams was wearing what they considered to be a homemade hat. Williams claims that this hat is a religious hat or "diadem."

For safety and security purposes, the policies and procedures of the Miami-Dade County Department of Corrections prohibit an inmate or detainee from wearing anything on his or her head. Pursuant to these policies and procedures, Scott instructed Williams to remove his hat. Williams responded that he had a right to wear the hat in the courthouse because he was wearing it for religious reasons.[2] Williams also responded that he could not remove the hat because he was handcuffed. Scott then removed the hat from Williams's head, placed it in a property bag, and handed the bag to the state correctional officers who were escorting Williams. In his declaration, Williams said that Scott snatched the hat "violently" and "with great force." (Dkt. 153 at ¶ 11.) And, this snatching of the hat caused Williams's neck to

_____

[2] Williams does not challenge on appeal the Miami-Dade County policy requiring him to remove his hat.

3

be "knocked, hit and twisted" and left Williams in "excruciating pain." (Id.) In his deposition, Williams testified that Scott's forearm or elbow hit his neck as Scott was removing the hat. At the same time, Williams testified that Scott did not punch him or karate chop his neck. (Dkt. 112-1 at 162:9 - 163:3.) When Williams later returned to the Florida Civil Commitment Center, he went to the infirmary to be examined, and the nurse provided him with Tylenol. Later, various doctors prescribed pain medications for headaches and neck pain, which Williams attributes to Scott's use of force.

After the incident with Scott, Williams appeared before a judge and obtained permission to put his religious hat back on his head. After the court appearance, correctional officers reshackled Williams and led him back toward the area where he had just previously seen Byrd and Scott. According to Williams, when Byrd saw him with the hat on again, he snatched the hat off his head and, without any provocation, started beating him. Williams testified that Byrd lost his temper, grabbed Williams by the neck from behind, slammed him into some iron bars, pulled him back from the bars and slammed him face-down onto a table, and choked him with both hands wrapped around his neck. (Dkt. 153 at ¶ 16-17; 112-1 at 29:20 - 30:6.) Williams testified that Byrd's actions caused excruciating pain and that Williams almost lost consciousness. (Dkt. 153 at ¶ 17; 112-1 at 31:2-20.) Throughout the incident, Byrd

4

ignored the order of a fellow officer to release Williams, and Byrd had to be forcibly restrained by other guards. (Dkt. 153 at ¶ 17-19; 112-1 at 31:2-20.) Williams estimates that the attack lasted around fifteen minutes.

During the altercation with Byrd, Williams could hear and see Jimenez who, Williams testified, "was inciting Byrd and others to commit other acts of violence" against Williams. (Dkt. 153 at ¶ 18.)

## A. Officer Scott

Scott contends that the district court erred in denying him qualified immunity for Williams's claim that he used excessive force in violation of the Fourteenth Amendment. We agree with Scott that he is entitled to qualified immunity because Williams has failed to produce sufficient evidence that Scott applied force maliciously and sadistically for the very purpose of causing harm.[3]

A pretrial detainee's claim of excessive force is governed by the Due Process Clause of the Fourteenth Amendment. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). Such claims are analyzed under the same standard as a convicted prisoner's claim under the Eighth Amendment. *Id.*[4]

---

[3] Our conclusion that Williams has failed to establish a violation of the Fourteenth Amendment obviates any need to determine whether the violation was clearly established under the facts of this case.

[4] Williams is currently housed in the Florida Civil Commitment Center, and thus he is technically not a pretrial detainee. Williams notes that the Eleventh Circuit has not decided the issue

To determine whether Williams has established an excessive force claim in this case, the "core judicial inquiry" is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, __ U.S. __, 130 S. Ct. 1175, 1178 (2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 999 (1992)) (internal quotation marks omitted). In determining whether force was applied maliciously and sadistically for the very purpose of causing harm, courts look to five factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 106 S. Ct. 1078, 1085 (1986)) (internal quotation marks omitted).

Viewing the facts in the light most favorable to Williams, and applying the pertinent factors to those facts, we conclude that no reasonable juror could find that

---

of what constitutional standards apply to civil committees, but he does not contend that the district court erred in analyzing his excessive force claim based on Eighth Amendment and Fourteenth Amendment standards. We therefore assume that excessive force claims brought by those housed in civil commitment centers are analyzed in the same manner as excessive force claims brought by pretrial detainees.

Scott applied force maliciously and sadistically for the very purpose of causing harm. First, Williams's injuries–neck pain and continuous headaches–are of the modest variety. While a significant injury is not required to establish an Eighth Amendment or a Fourteenth Amendment violation, *Wilkins*, 130 S. Ct. at 1178 (citing *Hudson*, 503 U.S. at 9, 112 S. Ct. 995, 1000), the minor nature of the injury runs counter to a finding of malicious and sadistic intent. Instead, the minor nature of the injury shows that the amount of force was plausible under the circumstances. *Id.* Second, at least some force was needed in order to remove Williams's hat from his head. Even accepting Williams's assertion that he did not remove the hat because he was handcuffed and physically incapable of removing it, Scott still had to stabilize Williams and remove the hat for him, an action that requires minimal force. Third, the relationship between the need and the amount of force used does not support a finding of malicious and sadistic intent. While the need for force was minimal in light of Williams being handcuffed, the amount of force used was also minimal. Williams testified that Scott did not punch or karate chop his neck; instead, Scott's forearm hit Williams's neck as he was removing the hat. Fourth, after Scott removed the hat, he returned it to Williams. The immediate return of the hat belies William's theory that Scott, enraged by the wearing of the hat, used force sadistically and maliciously. The fifth factor has little application to the incident involving Williams

7

and Scott. While Williams did not pose a threat to the safety of staff and inmates, he was nonetheless in violation of a safety regulation. Interpreting all of the evidence and surrounding circumstances in Williams's favor, we conclude that no reasonable juror could conclude that Scott applied force maliciously and sadistically to cause harm. Instead, Scott used minimal force in a good-faith effort to enforce the department regulation that prohibited an inmate or detainee from wearing a hat in the courthouse.

The district court adopted the magistrate judge's finding that a genuine issue of material fact exists as to whether Scott had the requisite malicious and sadistic intent. The magistrate judge focused on the fact that Williams, who was handcuffed, posed no safety threat to anyone and was physically incapable of complying with Scott's order to remove the hat. We do not think these facts create a jury question on the issue of sadistic and malicious intent. The entire altercation between Williams and Scott is based on the need to enforce the department regulation prohibiting inmates and detainees from wearing hats. Scott applied force in order to remove the hat and that force ended as soon as the hat was removed. Williams does not dispute that Scott injured him while trying to enforce the hat regulation. Instead, Williams's excessive force theory against Scott is that the manner in which Scott removed the hat was so forceful and so extreme that Scott must have been sadistically and maliciously

motivated. The record evidence, however, does not support this inference. Because a reasonable juror could not find that Scott applied force maliciously and sadistically, we reverse the district court's denial of Scott's motion for summary judgment.

## B.    Officer Jimenez

Williams claims that Jimenez violated his constitutional rights when he failed to intervene when Byrd used excessive force. Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998). However, in order for liability to attach, the officers must have been in a position to intervene. *See id.* (citing *Thompson v. Boggs*, 33 F.3d 847, 857 (7th Cir. 1994)); *see also Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008), *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000).

Jimenez does not contend that Byrd's use of force was not excessive. Instead, Jimenez argues that he is entitled to qualified immunity because he was not in a position to intervene.

We agree with the district court that a genuine issue of material fact exists as to whether Jimenez was in a position to intervene, and thus summary disposition of this claim is not appropriate. Williams testified that Jimenez observed Byrd's actions and actually encouraged Byrd with taunts. Williams also testified that the length and

9

extent of the attack was substantial, suggesting Jimenez had the opportunity to intervene and prevent the attack. On the other hand, Jimenez testified that he never saw Byrd's alleged beating of Williams and thus was never in a position to intervene of behalf of Williams. In support, Jimenez points out that Williams could not identify Jimenez and place him at the scene of the beating until thirteen months after the incident, when Williams read an internal investigation report of the incident. Based on all the evidence, we conclude that a genuine dispute of material fact exists as to whether Jimenez was in a position to intervene and prevent Byrd's alleged beating of Williams. The fact-finder must decide whom to believe and what actually transpired. We affirm the district court's denial of Jimenez's motion for summary judgment based on qualified immunity.[5]

AFFIRMED IN PART AND REVERSED IN PART.

---

[5] We reject Jimenez's argument that the law was not clearly established that he could be held liable for failing to intervene. Based on Williams's version of events, Jimenez not only watched Byrd's unprovoked beating but also cheered him on. On these facts, the law clearly establishes that Jimenez could be held liable. *Ensley*, 142 F.3d at 1407 ("[I]t is clear that if a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983.") (quoting *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986)).