[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-16077
Non-Argument Calendar
_____

D.C. Docket No. 2:09-cv-00204-WCO


JONATHAN B. COLLINS,

Plaintiff-Appellant,

versus

GEORGE ENSLEY,
Individually and in his former official capacity as Sheriff of Fannin County,
RUSTY WHITTENBARGER,
in his individual capacity,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 21, 2012)

Before MARCUS, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Jonathan Bruce Collins appeals, <u>pro se</u>, the district court's grant of summary judgment to Sheriff George Ensley and Deputy Rusty Whittenbarger on his 42 U.S.C. § 1983 complaint alleging excessive force and a custom or policy of constitutional violations.  On appeal, Collins argues that: (1) Deputy Whittenbarger is not entitled to qualified immunity because probable cause did not exist to arrest him for being drunk in public at a high school football game, or for obstructing a law enforcement officer in the course of his duties by lying about drinking alcohol; and (2) Sheriff Ensley failed to adequately research and vet Deputy Whittenbarger before allowing him to arrest citizens, and he was also liable for failing to adequately train and supervise Whittenbarger.  After thorough review, we affirm.

We review <u>de novo</u> the district court's decision on a motion for summary judgment based on qualified immunity, <u>Terrell v. Smith</u>, 668 F.3d 1244, 1249-50 (11th Cir. 2010), and view the facts in the light most favorable to the plaintiff, <u>Grider v. City of Auburn, Ala.</u>, 618 F.3d 1240, 1246 n.1 (11th Cir. 2010).  We review the denial of a Fed.R.Civ.P. 59 motion for abuse of discretion.  <u>Jacobs v. Tempur-Pedic Int'l, Inc.</u>, 626 F.3d 1327, 1343 n.20 (11th Cir. 2010).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "[G]enuine disputes of facts are those in which

the evidence is such that a reasonable jury could return a verdict for the non-movant." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (quotation omitted). "For factual issues to be considered genuine, they must have a real basis in the record." Id. (quotation omitted). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). Similarly, "[s]peculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) (quotation and emphasis omitted).

Qualified immunity shields government officials sued in their individual capacities from liability against a plaintiff's claims under 42 U.S.C. § 1983 if the officials' conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Grider, 618 F.3d at 1254 (quotations omitted). "The initial inquiry in a qualified immunity case is whether the public official proves that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Id. at 1254 n.19 (quotation omitted). A two-part framework is then used to evaluate a qualified immunity defense. Id. at 1254. Under this framework, the court must ascertain: (1) "whether the plaintiff's allegations, if true, establish a constitutional violation," and (2)

3

"whether the right violated was 'clearly established.'" Id. This analysis may be done in the order most appropriate for the case. Id.

We have said that, in the absence of probable cause, the use of any force is unreasonable and violates the Fourth Amendment. See Reese v. Herbert, 527 F.3d 1253, 1272-73 (11th Cir. 2008). Probable cause to arrest exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Coffin v. Brandau, 642 F.3d 999, 1006-07 (11th Cir. 2011). "[P]robable cause . . . need not reach the same standard of conclusiveness and probability as the facts necessary to support a conviction." Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (quotation and alteration omitted). When "an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." Id. at 1196 (quotation omitted). Moreover, in the absence of actual probable cause, the existence of arguable probable will support the application of qualified immunity. See Reese, 527 F.3d at 1272. "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [officer]

4

could have believed that probable cause existed to arrest." Lee, 284 F.3d at 1195 (quotation omitted).

We analyze claims of excessive force used to effectuate an arrest "under the Fourth Amendment's objective reasonableness standard." See Edwards v. Shanley, 666 F.3d 1289, 1295 (11th Cir. 2012) (quotation omitted).  Under that standard, we must evaluate "whether the officer's conduct is objectively reasonable in light of the facts confronting the officer," and, in so doing, must judge the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id. (quotations omitted). Accordingly, the Supreme Court has indicated that, in assessing the reasonableness of an officer's use of force, courts should consider "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." Id. (quotation omitted); see also Graham v. Connor, 490 U.S. 386, 396 (1989).

As we have explained, "[w]hen an officer lawfully arrests an individual for the commission of a crime, no matter how minor the offense, the officer is entitled under controlling Supreme Court precedent to effectuate a full custodial arrest." Lee, 284 F.3d at 1196.  The right to make a full custodial arrest "necessarily carries with it the

5

right to use some degree of physical coercion," and thus typically involves some force and injury.  Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002).  In Rodriguez, an officer arrested the defendant based on a six-year old warrant for a drug offense in a case of mistaken identity.  Id. at 1343-45.  The officer grabbed the defendant's left arm, twisted it behind the defendant's back, and "forced it up to just below the shoulder-blade."  Id. at 1345.  The defendant fell to the ground, screaming in pain while the officer finished handcuffing him.  Id.  Subsequently, the defendant required more than 25 surgeries and his arm was ultimately amputated below the elbow.  Id. at 1351.  In concluding that the officer's use of force was not excessive in violation of the Fourth Amendment, we stated that the officer's handcuffing technique was "a relatively common and ordinarily accepted non-excessive way to detain an arrestee."  Id.  Similarly, we have indicated that a police officer has lawful authority "to effect a custodial arrest and to use a reasonable amount of force to subdue and secure" an individual who violated a county noise ordinance by honking her car horn.  See Lee, 284 F.3d at 1195, 1198.

As an initial matter, the parties dispute whether Deputy Whittenbarger had the power to effectuate an arrest under Georgia law.  However, the undisputed evidence in the record adequately establishes that Deputy Whittenbarger was certified under Georgia law, and thus, the requirement that registered peace officers not have more

6

than a 12-month gap between positions in law enforcement was inapplicable to him. See Ga. Code Ann. § 35-8-10. Although Collins now argues that a domestic violence conviction prohibited Whittenbarger from validly possessing powers to arrest, Collins did not make that argument or present corroborating evidence to the district court until his motion for reconsideration, and "[a] motion for reconsideration cannot be used to . . . raise argument or present evidence that could have been raised prior to the entry of judgment." Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 957 (11th Cir. 2009). Nor do we typically consider an argument not presented to the district court. See Ramirez v. Sec'y, U.S. Dep't of Transp., 686 F.3d 1239, 1249 (11th Cir. 2012). Thus, for the purposes of qualified immunity, we conclude that Whittenbarger was "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Grider, 618 F.3d at 1254 n.19 (quotations omitted).

We also conclude that probable cause or arguable probable cause existed for Deputy Whittenbarger to arrest Collins for obstructing a law enforcement officer. Under Georgia law, it is a misdemeanor to "knowingly and willfully obstruct[] or hinder[] any law enforcement officer in the lawful discharge of his official duties." Ga. Code Ann. § 16-10-24(a). The Georgia Court of Appeals has explained that "forcible resistance is not required to prove that an officer was hindered or obstructed in a misdemeanor obstruction case." Wilcox v. State, 684 S.E.2d 108, 110 (Ga. Ct.

7

App. 2009) (quotation omitted). Rather, "[a]rgument, flight, stubborn obstinance, and lying are all examples of conduct that may satisfy the obstruction element." Id. (quotation omitted).

Accepting Collins's version of events as true, Whittenbarger asked him whether he had been drinking, and, thinking that Whittenbarger was asking him whether he specifically drank anything during the football game, Collins repeatedly told Whittenbarger that he had not been drinking during the game. Deputy Whittenbarger then told Collins that he could smell alcohol on Collins's breath. It does not matter whether Collins, in fact, lied to Whittenbarger, or whether he admitted in his deposition that he lied by saying that he had always been told to deny drinking if asked by a police officer. Indeed, the inquiry for purposes of probable cause does not ask whether Whittenbarger had enough evidence to sustain a conviction, see Lee, 284 F.3d at 1195, but focuses on "the facts and circumstances within the officer's knowledge." Coffin, 642 F.3d at 1006-07.

In this case, the facts and circumstances would cause a prudent person to believe that Collins's negative responses to questions about drinking were intentional lies, or, at least, constituted stubborn obstinance, thereby indicating that Collins had committed the offense of obstructing or hindering a law enforcement officer. See Wilcox, 684 S.E.2d at 110. In addition, Collins's undisputed actions gave rise to

8

arguable probable cause because a reasonable officer in the same circumstances and possessing the same knowledge as Whittenbarger could have believed that probable cause existed to arrest Collins. See Lee, 284 F.3d at 1195. A reasonable officer would have viewed Collins's negative response to questions about whether he had been drinking as an intentional lie in light of the undisputed evidence that Collins smelled strongly of alcohol when speaking with Whittenbarger.

Contrary to Collins's arguments, the fact that he was not ultimately convicted of being drunk in public or of obstructing a law enforcement officer did not vitiate the probable cause for his initial arrest because post-arrest incidents like this are irrelevant to the circumstances giving rise to probable cause. Similarly, the officers' post-arrest conduct in allegedly failing to read Collins his Miranda rights did not implicate "the facts and circumstances within the officer's knowledge." See Coffin, 642 F.3d at 1006-07.

In short, because probable cause or arguable probable cause existed to arrest Collins, Deputy Whittenbarger had the right "to effectuate a full custodial arrest," Lee, 284 F.3d at 1196, which carried with it the attendant right to use physical coercion involving some force and injury, Rodriguez, 280 F.3d at 1351. Applying the factors articulated by the Supreme Court in Graham, it appears that Deputy Whittenbarger was entitled to use only minimal force in effectuating a full arrest.

9

First, Collins's offense of lying to Whittenbarger or obstructing his investigation by being stubbornly obstinate was a minor crime.  See Graham, 490 U.S. at 396. Second, viewed in the light most favorable to Collins, the record establishes that Collins did not pose an immediate threat to the safety of Whittenbarger or other officers because he was not being loud or obnoxious, making threats, or acting combatively.  See id.  Third, Collins says that he did not resist arrest, and it is undisputed that he did not flee or attempt to evade arrest.  See id.  Thus, Whittenbarger was entitled to employ only that quantum of force reasonably necessary "to subdue and secure" Collins.  See Lee, 284 F.3d at 1198.

Nevertheless, under our precedent, twisting an arrestee's arm behind his back and "forc[ing] it up to just below the shoulder-blade" is an "ordinarily accepted" and "non-excessive way to detain an arrestee." Rodriguez, 280 F.3d at 1345, 1351.  This is true even if the specific procedure employed results in substantial pain and loud protestations.  See id. at 1345.  In addition, since Whittenbarger was handcuffing Collins at a busy football stadium in the midst of a large crowd, and while Collins was probably intoxicated, it was not objectively unreasonable for the handcuffs to have been placed on Collins backwards.  As we've repeatedly said, we must avoid evaluating Whittenbarger's conduct "with the 20/20 vision of hindsight." Edwards, 666 F.3d at 1295 (quotation omitted).  Furthermore, even under Collins's version of

10

events, Deputy Whittenbarger did not continue to apply force after Collins was arrested, and he was immediately taken to the jail where his handcuffs were removed.[1]

Viewing the evidence in the light most favorable to Collins and drawing all reasonable inferences in his favor, Collins sustained an injury to the ligament in his wrist and has permanent numbness in his thumb as a result of the recent handcuffing. Nevertheless, as we've explained, minimal force does not become excessive because severe or tragic results occurred, and we do not "use hindsight to judge the acts of police officers." Rodriguez, 280 F.3d at 1352-53. Thus, based on our case law, we conclude that Deputy Whittenbarger's use of force was not excessive, and Collins's constitutional rights were not violated. See Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1234 (11th Cir. 2010) (holding that we may affirm the district court's grant of summary judgment for any reason supported by the record).

To the extent that Collins challenges the denial of his Fed.R.Civ.P. 59 motion for reconsideration, Collins sought to impermissibly relitigate the merits of the

---

[1] Although Collins relies on the statements of Officer Mike Presswood in his brief on appeal, he does not argue that the district court erred in finding that those statements -- that the arrest was violent, that he would not have used handcuffs in that situation, and that it took him ten minutes to remove the handcuffs because they were put on backwards -- were inadmissible hearsay or by failing to rely on them in resolving the defendants' motion for summary judgment. Accordingly, he has abandoned any argument that the statements were not inadmissible hearsay, and, regardless, the statements do not alter the disposition of Collins's excessive force claim in light of the preceding analysis. See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (explaining that, although we read pro se briefs liberally, issues not briefed on appeal by a pro se litigant are abandoned).

11

summary judgment motion, and to introduce new evidence and raise arguments that could been presented prior to the entry of summary judgment, and the district court did not abuse its discretion by denying it.  See Wilchombe, 555 F.3d at 957.  Finally, because Deputy Whittenbarger did not violate Collins's constitutional rights, we need not consider Collins's individual and official capacity claims against Sheriff Ensley concerning a custom or policy of constitutional violations.  See Penley v. Eslinger, 605 F.3d 843, 855 (11th Cir. 2010); Gish v. Thomas, 516 F.3d 952, 955 (11th Cir. 2008).  Accordingly, we affirm the district court's grant of summary judgment.

**AFFIRMED.**