[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11821
_____

D.C. Docket No. 2:18-cv-01130-AKK

WILLIAM H. WHITEHEAD as power of attorney
for Lewis E. Whitehead, Jr. pursuant to a power of
attorney signed by Lewis E. Whitehead, Jr.,

Plaintiff-Appellant,

versus

BBVA COMPASS BANK,
JAMES C. PUCKETT,

Defendants-Appellees.

_____

On Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 6, 2020)

Before NEWSOM and BRANCH, Circuit Judges, and RAY,[*] District Judge.

RAY, District Judge:

We consider in this appeal whether the District Court correctly granted summary judgment against the Appellant (who was an investor) on his various claims that the Appellees (a bank officer and the bank with whom he was employed) wrongfully failed to inform the Appellant of the risks involved in making a certain investment.  When this investment sold for a loss, this lawsuit ensued.   Because we find that the alleged wrongful conduct of the Appellees did not cause the economic loss for which the Appellant sues, we affirm the district court's grant of summary judgment in favor of the Appellees.

## I.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party

---

[*] Honorable William M. Ray II, United States District Judge for the Northern District of Georgia, sitting by designation.

bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On motion for summary judgment, the Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); see also *Anderson*, 477 U.S. at 255.  Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. See *Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).  Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice;

3

there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II.

The pertinent facts in this case are as follows. Lewis E. Whitehead, Jr., acting through his son William H. Whitehead (collectively, "Whitehead"), opened an account with BBVA Compass Bank (Compass Bank) to consolidate his financial accounts. His contact at Compass Bank was with James C. Puckett ("Puckett"), who was a senior officer of the bank. In electing to move his father's money to Compass Bank, William Whitehead placed great confidence in Puckett and allegedly vested Puckett with responsibility and control over his father's funds.[1]

At the same time, the record demonstrates that Whitehead agreed to disperse some of his funds to another investment company. Puckett introduced Whitehead to Wesley McGugin, who was an investment officer at BBVA Compass Investment Solutions ("BCIS"), which was a related company to Compass Bank. Thereafter, Whitehead opened a brokerage account at BCIS using funds from the Compass Bank account. Whitehead executed documents authorizing BCIS and

---

[1] Of course, despite his engagement of Puckett and Compass Bank, William Whitehead maintained ultimate control and responsibility for his father's funds.

4

McGugin to act as his "registered representative" for the purchase of brokered certificates of deposit which were not affiliated with or the obligation of Compass Bank. This lawsuit focuses on a certificate of deposit issued by the Bank of the West (the "West CD"), which McGugin and BCIS acquired for the Whitehead portfolio. After holding the West CD for approximately 19 months, BCIS and McGugin surrendered the West CD for a $38,000 loss. Whitehead seeks to recover this $38,000 loss as part of his damages in this action.[2]

Interestingly, Whitehead has sued neither BCIS nor McGugin, even though it is undisputed that McGugin directed the surrender of the West CD in his capacity as Whitehead's investment representative at BCIS. Rather, Puckett and Compass Bank are the objects of Whitehead's displeasure. Arguing that Puckett (and only Puckett) was responsible for the investment of Whitehead's funds and that Puckett did not inform him of the potential penalty if the West CD was sold prior to maturity (which was the source of the $38,000 loss), Whitehead contends that Puckett and Compass Bank are liable for damages for securities fraud pursuant to Security Exchange Commission Rule 10(b)(5) and §10b of the Security Exchange Act of 1934, as well as for state common law claims of negligence, breach of fiduciary duty, suppression, and fraud.

---

[2] The total amount of compensatory damages sought ($100,000) also includes brokerage fees. These brokerage fees were earned by BCIS and McGugin as they managed the Whitehead portfolio at BCIS.

5

Importantly, Puckett has never worked nor has he ever been an investment officer for BCIS or its parent company. As a result, he never managed Whitehead's BCIS brokerage account, even if he did manage Whitehead's account at Compass Bank. This is not disputed by anything in the record before us.[3]

Puckett and Compass Bank dispute Whitehead's claims for a variety of reasons, including that Puckett did not have responsibility for Whitehead's decision to invest in the West CD, had no duty to ensure that Whitehead understood the risk in doing so, and had no discussions with Whitehead about making this investment. Puckett and Compass argue that, if Whitehead has been wronged, he should look the way of BCIS and McGugin.

## III.

When considering Whitehead's claims at the summary judgment stage, the district court was not impressed with his arguments, as it granted summary judgment to Puckett and Compass for a variety of reasons. We agree with the district court in finding that this litigation is inapt. Assuming without deciding that Puckett (and Compass Bank by extension) urged Whitehead to purchase the West CD and did not explain the penalty if it were surrendered prior to maturity, as there

---

[3] Although Puckett recommended investments in structured CDs (like the West CD), the record shows that Puckett managed Whitehead's account at Compass Bank and not his BCIS account that included the West CD.

6

arguably is some evidence in the record to suggest as much, nonetheless as a matter of law they have no responsibility for the loss claimed here. It was BCIS and McGugin, not Puckett and Compass Bank, who served as Whitehead's representative for purchase of structured certificates of deposit transactions; it was BCIS and McGugin, not Puckett and Compass Bank, who served as Whitehead's representative in the purchase of the West CD at issue; and it was BCIS and McGugin, not Puckett and Compass Bank, who made the decision to and did surrender the West CD on Whitehead's behalf for the $38,000 loss.

And, importantly, even if the trier of fact were to agree that Puckett urged Whitehead to purchase the West CD (which is an allegation that Puckett and Compass Bank deny), the actual purchase of the West CD caused no harm. Instead, the damages suffered by Whitehead arise from the decision to *surrender* the West CD. No one, including Whitehead, contends that Compass Bank and Puckett had anything to do with the surrender of the West CD, nor is there any evidence that Puckett even knew that it was being sold. Quite clearly, then, any role which Puckett may have played in recommending that Whitehead purchase the West CD could not be the proximate cause of the loss which Whitehead suffered.

It is true, as Whitehead argues in this appeal, that the parties disagree whether Puckett urged Whitehead to buy the West CD. Puckett says that he did not, while William Whitehead says that he did. We assume, as we must for

7

purposes of the motion for summary judgment, that Whitehead's allegation that Puckett lobbied in favor of this investment is true. And, we also accept Whitehead's contention that Puckett never informed him that there would be a penalty associated with an early surrender of the West CD. If the disposition of this case turned on the resolution of these disputed facts, then we might agree that the district court erred in granting summary judgment. But, it does not and we do not.

To succeed in a securities fraud case, a plaintiff must demonstrate that he suffered economic loss caused by the material misrepresentation or omission charged to the defendant. *Ledford v. Peeples*, 657 F.3d 1222, 1248 (11th Cir. 2011). "It is insufficient to show that Defendants induced the Plaintiff[ ] into deals that subsequently went bad." *Michael K. Sheils Trust Dated March 13, 2003 v. Kuhn*, 2010 WL 11507728, at *7 (M.D. Fla. 2010). And, "[i]f the investment decision is induced by misstatements or omissions that are material and that are relied on by the claimant, but are not the proximate reason for the pecuniary loss, recovery ... is not permitted. *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1447 (11th Cir. 1997).[4]

---

[4] The lack of this causation element is also fatal to Whitehead's state law claims for negligence, breach of fiduciary duty, suppression, and fraud. See *Alabama Great S. R. Co. v. Raney*, 37 So. 2d 150 (Ala. Ct. App. 1948) (in negligence claims, "plaintiff must show…that defendant owed plaintiff a duty, that there was a breach of such duty, and that injury resulted as a proximate consequence of the breach"); *Aliant Bank, a Div. of*

As we have discussed, Puckett and Compass Bank were not involved in either the recommendation to surrender the West CD or in the actual surrender which resulted in the loss at issue in this case. McGugin testified that it was his recommendation to Whitehead to surrender the West CD and that Whitehead agreed with his recommendation. Whitehead, on the other hand, denies that McGugin (or anyone else for that matter) ever consulted with him or obtained his approval to liquidate the West CD. However, Whitehead has offered no competent evidence to contradict Puckett's testimony that Puckett was not involved in the surrender of the West CD or that he even knew about it in advance. Of course, from Puckett's perspective, there was no reason for him to know because the West CD wasn't held in Whitehead's Compass Bank account and was, instead, held by BCIS in the account managed by McGugin.

The salient point here is that it was the surrender of the West CD, not its purchase, that generated the loss incurred by Whitehead. Puckett and Compass

---

*USAmeribank v. Four Star Investments, Inc.*, 244 So. 3d 896, 907 (Ala. 2017) ("the elements of a breach-of-fiduciary-duty claim are the existence of a fiduciary duty, a breach of that duty, and damage suffered as a result of that breach"); *Boswell v. Liberty Nat'l Life Ins. Co.*, 643 So. 2d 580 (Ala. 1994) (suppression requires "(1) that the defendant suppressed a material fact, (2) that the defendant had a duty to communicate that material fact, either because of a confidential relationship between the parties or because of the particular circumstances of the case, and (3) that the plaintiff suffered actual injury as a result of the suppression"); *Exxon Mobil Corp. v. Alabama Dept. of Conservation and Natural Resources*, 986 So.2d 1093(Ala. 2007) ("the elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation").

9

Bank were not involved in the decision to surrender or the act of surrendering the West CD. Thus, they cannot fairly be accused of being the proximate cause of Whitehead's harm when the CD was surrendered. If Whitehead neither agreed to the sale of the West CD nor was even consulted, as he alleges, then any failure to inform him of the resulting penalty is beside the point. It wasn't his lack of knowledge about the penalty which caused the loss, but rather, the decision of McGugin and BCIS to surrender the West CD when there was a penalty for doing so. Thus, if there is to be any complaint for doing so, such claim would be against Whitehead's representatives in this transaction, McGugin and BCIS, not Puckett and Compass Bank.[5]

In summary, we do not express any opinion as to whether Whitehead has, or would have timely had, a valid claim against either McGunin or BCIS for their decision to surrender the West CD or the resulting loss. Rather, we conclude simply that there is no viable claim against Puckett or Compass Bank. No act or omission asserted against them was the cause of the loss suffered by Whitehead, and as such, the district court properly granted summary judgment in their favor.

**AFFIRMED**.

---

[5] Of course, a defendant can proximately cause an injury without being the last mover in the chain of events culminating in that injury. In this particular case, though, the economic loss was too attenuated from the defendants' alleged earlier misconduct to raise a genuine issue of material fat as to causation.

10