[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14518
Non-Argument Calendar

_____

D.C. Docket No. 2:17-cv-00337-TPB-MRM

MICHAEL A. BROWN,

Plaintiff-Appellant,

versus

MICHAEL MCCLURE, M.D., PhD,
BHS BRYN MARCUS,
ARNP K. JOHNSON,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 11, 2021)

Before WILSON, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Michael A. Brown, a state prisoner proceeding pro se, appeals the district court's order granting summary judgment on his 42 U.S.C. § 1983 action in favor of defendants Dr. Michael McClure, Bryn Marcus, and Kelly Johnson. After careful consideration, we affirm.

I.

Michael Brown is a Florida state prisoner serving a life sentence. In April 2016, after assaulting staff at another institution, Brown was transferred to Charlotte Correctional Institution on an emergency basis to await closed management confinement. Brown requested to see mental health staff for depression soon after arriving at Charlotte. But nothing came of it. So on July 21, he "bit into" the antecubital vein in his left arm. That resulted in Brown being placed on isolation management room/self-harm observation status (IMR/SHOS), where Kelly Johnson was the nurse assigned to his case. Brown was kept on IMR/SHOS for four days. Brown says that during that time he repeatedly told Johnson that he was having thoughts of self-harm. Yet on July 25, Brown was discharged from IMR/SHOS.

One hour after being discharged, Brown used a tool to cut open his antecubital vein. He was then transferred to an outside hospital to receive a blood transfusion. After he was released from the hospital, Brown was again placed on IMR/SHOS, this time under the care of Dr. McClure and counselor Marcus.

Although Brown claimed that he was depressed, Dr. McClure instead diagnosed him with Dissocial Personality Disorder.

Dissocial Personality Disorder "is a mental condition in which a person consistently shows no regard for right and wrong; ignores the rights and feelings of others; persistently lies or deceives to exploit others; engages in unnecessary risk-taking or dangerous behavior with no regard for the safety of self or others." There is no effective medication to treat this disorder. Dr. McClure understood Brown's self-harm incidents to be an "attempt to justify his need for treatment and compel the medical intervention of his choice"—placement in a crisis stabilization unit. And as for Brown's claim that he was depressed, Dr. McClure and others had seen Brown exhibiting "behavior inconsistent with someone suffering from depression," and it appeared to Dr. McClure that "most of his difficulties stemmed solely from" Dissocial Personality Disorder. So Dr. McClure and Marcus observed and interviewed Brown for a week before discharging him from SHOS (but not IMR) on August 3.

Upon being discharged, Brown again attempted to cut open his sutures, this time using a spork. After this third self-harm incident, Dr. McClure decided that Brown would continue to harm himself until he got the treatment he wanted. So Dr. McClure recommended that Brown be transferred to another institution and

3

placed in their crisis stabilization unit.  Brown then timely filed this suit against Dr. McClure, Marcus, and Johnson under 42 U.S.C. § 1983.

## II.

We review our appellate jurisdiction de novo.  *Thomas v. Phoebe Putney Health Sys., Inc*, 972 F.3d 1195, 1200 (11th Cir. 2020).

We review a district court's order granting summary judgment de novo and consider all facts in the light most favorable to the nonmoving party.  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine factual dispute exists when "a reasonable jury could return a verdict for the non-movant" and the factual issues "have a real basis in the record."  *Mann*, 588 F.3d at 1303 (quoting *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993)).

## III.

Brown's § 1983 complaint alleged deliberate indifference to his serious medical needs in violation of the Eighth Amendment; discrimination; and pain and suffering.  Brown also asserts that the magistrate judge erred by denying his motion for appointment of counsel.

A.

Brown first challenges the magistrate judge's denial of his motion for appointment of counsel. But he "failed to object to or appeal the magistrate judge's decision to the district court." *United States v. Brown*, 342 F.3d 1245, 1246 (11th Cir. 2003). That means Brown is effectively "appealing a magistrate's decision directly to this Court." *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980)[1]; *see also United States v. Brown*, 441 F.3d 1330, 1352 (11th Cir. 2006). But the "law is settled that appellate courts are without jurisdiction to hear appeals directly from federal magistrates." *Renfro*, 620 F.2d at 500. So we lack jurisdiction over this claim.

B.

Brown next contends that the district court erred by granting summary judgment to the defendants on his Eighth Amendment deliberate-indifference claim. Prison officials violate the Eighth Amendment when they display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish "unconstitutionally inadequate medical treatment," a prisoner must show "an objectively serious medical need, an objectively insufficient response to that need, subjective awareness of facts

---

[1] All decisions of the Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

5

signaling the need, and an actual inference of required action from those facts."
*Kuhne v. Fla. Dep't of Corr.*, 745 F.3d 1091, 1094 (11th Cir. 2014) (alteration
adopted) (quoting *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)).

But not "every claim by a prisoner that he has not received adequate medical
treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105.
Instead, medical treatment violates the Eighth Amendment "only when it is so
grossly incompetent, inadequate, or excessive as to shock the conscience or to be
intolerable to fundamental fairness." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d
1263, 1271 (11th Cir. 2020) (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th
Cir. 1991)). "Mere incidents of negligence or malpractice do not rise to the level
of constitutional violations." *Harris*, 941 F.2d at 1505. Nor does a "simple
difference in medical opinion between the prison's medical staff and the inmate as
to the latter's diagnosis or course of treatment." *Id.*

Here, Brown has not shown that the defendants were deliberately indifferent
to his serious medical needs. Even if Brown could establish that his pattern of self-
harm was a serious medical need, he has not shown that the defendants acted with
"more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir.
1999). We begin with Dr. McClure. Brown came into Dr. McClure's care on July
27 after his second self-harm incident. Following Charlotte's policy, Dr. McClure
kept Brown for one week of treatment and observation before deciding whether to

6

refer him to a crisis stabilization unit. Brown told Dr. McClure that he was depressed and still having thoughts of self-harm, but Dr. McClure instead diagnosed Brown with Dissocial Personality Disorder. On August 3, after observing Brown for a week, Dr. McClure discharged him from SHOS but kept him on IMR. When Brown reopened his sutures later that day, Dr. McClure realized that Brown "would continue in such behaviors until he achieved his goal" of being transferred to a crisis stabilization unit. So he transferred Brown.

Brown has not shown that Dr. McClure was deliberately indifferent to his serious medical needs. Indeed, Brown does not dispute any of the above facts. He merely argues that Dr. McClure should have placed him into a crisis stabilization unit earlier. But this claim amounts to a disagreement with Dr. McClure's medical judgment—it does not reveal even more than negligent disregard of Brown's serious medical needs. *See Estelle*, 429 U.S. at 108; *Harris*, 941 F.3d at 1505. As we have said, where a "prisoner has received some medical attention and the dispute is over the adequacy of the treatment," we are "generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Hoffer*, 973 F.3d at 1272 (quoting *Harris*, 941 F.2d at 1507). And the medical attention Brown received from Dr. McClure isn't so "reckless or conscience-shocking" that it violates the Constitution. *Id.* at 1278; *see also Harris*, 941 F.2d at 1505.

The same goes for Marcus.  When Brown was returned to IMR/SHOS on July 27, Marcus met with Brown every day for a week to discuss his status.  According to Brown, Marcus was deliberately indifferent because he entered "inaccurate information" into Brown's medical notes to keep him in IMR/SHOS rather than transfer him to a crisis stabilization unit.  But Brown has not directed us to any evidence supporting this allegation.  Because it does not "have a real basis in the record," any factual dispute over this is not a genuine one.  *Mann*, 588 F.3d at 1303 (quoting *Hairston*, 9 F.3d at 919).  And "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328 (11th Cir. 2020) (quoting *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005)).

Brown also contends that Marcus should have recommended that he be placed into a crisis stabilization unit earlier.  To establish deliberate indifference on this basis, Brown must demonstrate that Marcus acted with "more than mere negligence."  *McElligott*, 182 F.3d at 1255.  He has not made that showing.  Following Brown's second self-harm incident, Marcus observed and interviewed Brown every day for a week before a discharge decision was made.  As we stated above, Brown's disagreement with that medical decision does not constitute deliberate indifference to a serious medical need.  *See Estelle*, 429 U.S. at 108; *Harris*, 941 F.2d at 1505.  Moreover, the medical attention he received from

8

Marcus was not so "grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hoffer*, 973 F.3d at 1271 (quoting *Harris*, 941 F.2d at 1505).

Brown also failed to show that Johnson acted with deliberate indifference. After Brown's first self-harm incident, he promptly received medical attention and was kept under observation for several days. According to Brown, Johnson then discharged him from IMR/SHOS against his will, after he told her that he was still having thoughts of self-harm. But Johnson stated that Brown's behaviors—she observed him "happily interacting with his fellow inmates and with staff"—were consistent with Dissocial Personality Disorder rather than depression. And again, though Brown may disagree with Johnson's medical judgment and treatment actions, that disagreement does not constitute deliberate indifference. *Harris*, 941 F.2d at 1505. And, once more, the medical attention Brown received from Johnson was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hoffer*, 973 F.3d at 1271 (quoting *Harris*, 941 F.2d at 1505).

Because there were no Eighth Amendment violations, Brown cannot recover damages for pain and suffering on that basis. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (compensatory damages only available under § 1983 for injuries "caused by the denial of his constitutional rights").

9

C.

Finally, Brown argues that all three defendants discriminated against him because of his "close management" status.  In his words, they "refused to admit" him to the crisis stabilization unit "due to his CM status."  For one thing, Brown has not established or even alleged that the defendants discriminated against him based on membership in a protected class.  *See Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001); *Houston v. Williams*, 547 F.3d 1357, 1363 (11th Cir. 2008).  Nor has he demonstrated that similarly situated prisoners received more favorable treatment.  *Jones*, 279 F.3d at 946–47.  And lastly, there is no genuine factual dispute as to whether the defendants discriminated against Brown; there is not "sufficient competent evidence" supporting his claim.  *Whitehead*, 979 F.3d at 1328.  As we have said, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Id.* (quoting *Ellis*, 432 F.3d at 1326).[2]

*       *       *

Because there are no genuine issues of material fact and the defendants are entitled to judgment as a matter of law, we **AFFIRM** the district court's order.

---

[2] To the extent that Brown contends that he was "denied Due Process in obtaining documents" that would prove discrimination, that claim is waived.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").