[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13521

Non-Argument Calendar

_____

JAMES W. PARSONS, III,

Plaintiff-Appellant,

*versus*

SHERIFF OF JEFFERSON COUNTY, ALABAMA,
ADVANCED CORRECTIONAL HEALTHCARE, INC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:20-cv-00806-AMM

_____

Before JORDAN, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

In this civil rights case arising under 42 U.S.C. § 1983, James Parsons, III, appeals the district court's order granting summary judgment in favor of Sheriff Mark Pettway, who operates the Jefferson County Jail in Alabama, and Advanced Correctional Healthcare, Inc. ("ACH"), the medical services provider at the Jail. Mr. Parsons, who suffers from multiple sclerosis, sued Sheriff Pettway and ACH for cruel and unusual punishment because he was deprived of his medications during the two periods he was incarcerated at the Jail in 2018 and 2019. The district court denied Mr. Parsons' claims primarily because he failed to establish that any medication was withheld when he was incarcerated in 2018, and he conceded during his deposition that he was not alleging any damages for his incarceration in 2019. After review of the parties' briefs and the record, we affirm.

I

We review *de novo* a district court's grant of summary judgment and apply the same standards used by the district court. *See Acevedo v. First Union Nat'l Bank*, 357 F.3d 1244, 1246–47 (11th Cir. 2004). We draw all inferences and review all evidence in the light most favorable to the nonmoving party. *See Rodriguez v. City of Doral*, 863 F.3d 1343, 1349 (11th Cir. 2017). Summary judgment should be granted only if the moving party demonstrates "that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Waddell v. Valley Forge Dental Assoc., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## II

### A

Mr. Parsons was diagnosed with multiple sclerosis in approximately 2008. Multiple sclerosis is a chronic and progressive neurologic illness that physically manifests in lesions on the brain.[1]

On June 7, 2018, Mr. Parsons was incarcerated at the Jefferson County Jail in Alabama. A few days later, on June 11, 2018, he was seen at the Jail's clinic by Dr. Pritchett for hypertension and multiple sclerosis. Mr. Parsons complained that he had burned the bottom of his feet when running on asphalt, but his "biggest concern" was his multiple sclerosis.

Dr. Pritchett noted during this visit that Mr. Parsons took Lemtrada—an intravenous medication that is administered over the course of several days every twelve months—for his multiple sclerosis. Dr. Pritchett observed that Mr. Parsons was administered his last dosage of Lemtrada around September of 2017. Based on the manufacturer's instructions, Lemtrada should be administered

---

[1] A letter from Mr. Parsons' neurologist, Dr. Diethelm, confirms that Mr. Parsons suffered from multiple sclerosis and was treated with Lemtrada.

no earlier than twelve months after the last dosage of the prior treatment cycle. Mr. Parsons, therefore, was not eligible for his next dose of Lemtrada until September of 2018.

Following his visit with Dr. Pritchett, Mr. Parsons was started on Bactrim to prevent an infection in his feet, as well as Prednisone, a steroid, for multiple sclerosis and ocular neuritis in the left eye. Dr. Pritchett also prescribed Tylenol for pain and Norvasc for blood pressure management. The Jail Medication Administration Record reflects that Mr. Parsons was given these medications as prescribed by Dr. Pritchett.

**B**

When Mr. Parsons was incarcerated in 2018, he submitted one grievance. Specifically, on June 24, 2018, Mr. Parsons complained that he was a multiple sclerosis patient and that his request to rinse himself after a bathroom accident was ignored. A few days later, on June 29, 2018, Mr. Parsons "bonded out" of the jail, and he was remanded to his home with an electronic ankle bracelet.

That same day, however, Mr. Parsons was admitted to the hospital due to a possible multiple sclerosis relapse. Dr. Diethelm, who had treated Mr. Parsons since 2015, noted that Mr. Parsons "presented to [him] with complaints of worsening numbness, tingling, weakness in the bilateral lower extremities as well as left eye vision loss." At the hospital, Mr. Parsons was started on Solu-Medrol, a medicine similar to the steroid he had received orally at the jail. An MRI of the brain and C-spine, both with and without contrast, was administered, but it revealed "no enhancing lesion."

The medication of Solu-Medrol was then stopped, and Mr. Parsons was discharged from the hospital. Mr. Parsons received various medications when he was discharged—Amlodipine, Norco, Toradol, Omeprazole, Imitrex, and Effexor—but none of those medications were needed to further treat his multiple sclerosis.

In 2019, Mr. Parsons violated his bond conditions, so he returned to the Jefferson County Jail for approximately seven months. During his incarceration in 2019, Mr. Parsons submitted twenty-three grievances. Two of those grievances were related to withheld medications, and two were related more generally to his multiple sclerosis condition. The rest of his grievances were not medically related.

Of note, in the grievance Mr. Parsons submitted on August 28, 2019, he complained that his "medicine was brought up [ ] by [his] mother," but he had not "gotten it." The medications provided by Mr. Parsons' mother were Ajovy, Amlodipine, Metoprolol, Omeprazole, Trazadone, and Norco. Although Mr. Parsons claimed that his mother supplied his medications to Jail officials, who rejected them, none of the medications supplied by Mr. Parsons' mother included "any medication for the daily treatment of [multiple sclerosis]."

Mr. Parsons was subsequently released during the COVID-19 pandemic and is no longer incarcerated.

## C

In 2020, Mr. Parsons filed a four-count class action complaint under § 1983 against Sheriff Pettway and ACH for damages and

injunctive relief because they withheld his multiple sclerosis medication.  Counts I and II sought damages and injunctive relief from Sheriff Pettway, while Counts III and IV sought the same relief from ACH.

Mr. Parsons' complaint specifically alleged that the defendants (1) ignored his medical requests forms and grievances regarding withheld medication, (2) withheld his medication after his mother "delivered it to the jailers," and (3) withheld his necessary medication even after receiving "written confirmation" from his doctor regarding the likelihood of a multiple sclerosis relapse.  Mr. Parsons further alleged that because the defendants withheld his medication, he suffered "significant numbness in his limbs and extremities, making it difficult for him to walk" and that a post-custody MRI revealed "several lesions."

## D

After the filing of Mr. Parsons' complaint, Sheriff Pettway filed a motion to dismiss arguing that he was entitled to qualified immunity on all claims.  The district court granted in part and denied in part Sheriff Pettway's motion.  The district court dismissed Count I to the extent that Mr. Parsons alleged a theory of "personal participation."  The district court, however, ruled that Sheriff Pettway was not entitled to qualified immunity to the extent that Count I alleged a theory of "supervisory liability."  The district court also dismissed Count II as moot because Mr. Parsons was no longer in the custody of the Jefferson County Jail.

During discovery, Mr. Parsons made three critical concessions. First, he admitted that since he received his annual Lemtrada injection in September of 2017, he would not have been eligible for a new injection until September of 2018—two months after his first period of incarceration at the Jail ended. Second, he conceded that there was "no mention of not receiving medication" in the only grievance that he filed during his 2018 incarceration. Finally, he admitted that he was not alleging that any damages occurred during his second incarceration at the Jail in 2019.[2]

After discovery closed, Sheriff Pettway and ACH filed their respective motions for summary judgment. The district court granted Sheriff Pettway's and ACH's motions for summary judgment as to claims arising from Mr. Parsons' 2018 and 2019 incarcerations, and dismissed as moot Mr. Parsons' claim for injunctive relief against ACH. Significantly, the district court concluded that Mr. Parsons had not established that any medication that he should have received during his 2018 incarceration was withheld. The district court also concluded that because Mr. Parsons testified during his deposition that he was not claiming he suffered any damages during his 2019 incarceration, he failed to "prove an essential element of his claim."

This appeal followed.

---

[2] Mr. Parsons also informed the district court that he "w[ould] not be moving for class certification."

## III

Mr. Parsons argues that the district court erred in granting summary judgment in favor of ACH and Sheriff Pettway. *See* Appellant's Br. at 14. According to Mr. Parsons, the district court erred because he "did not abandon his claim and he suffered pain from not having his medication." *Id*. at 15. Mr. Parsons also argues that the district court erred in holding that Sheriff Pettway was entitled to qualified immunity. *Id*. at 23.

Viewing the facts in the light most favorable to Mr. Parsons, we agree with the district court that ACH and Sheriff Pettway were not deliberately indifferent to Mr. Parsons' multiple sclerosis illness by withholding his necessary medications during his incarceration in 2018 and 2019. We therefore affirm.

## A

The Eighth Amendment prohibits "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).[3] To establish a claim for deliberate indifference to a medical need, a plaintiff must establish "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).

---

[3] Mr. Parsons was a pretrial detainee rather than a convicted prisoner. His claims are governed by the Due Process Clause of the Fourteenth Amendment, which "guarantees pretrial detainees the right to basic necessities that the Eighth Amendment guarantees convicted persons." *Gish v. Thomas*, 516 F.3d 952, 954 (11th Cir. 2008).

22-13521                Opinion of the Court                9

Here, as the district court noted, the parties did not dispute that Mr. Parsons' multiple sclerosis constituted a serious medical need. *See* D.E. 92 at 17. Rather, based on the arguments presented by the parties and considered by the district court, only the second and third elements—deliberate indifference and causation—are at issue in this appeal. As we explain in more detail below, we conclude that Mr. Parsons failed to establish those two elements during the two periods that he was incarcerated at the Jefferson County Jail.[4]

We conduct our analysis in chronological order, so we begin with Mr. Parsons' incarceration in 2018 and then turn to his incarceration in 2019.

**1**

As to Mr. Parsons' 2018 incarceration, the district court concluded that Mr. Parsons failed to establish that either defendant acted with deliberate indifference because he did not show that any medication was withheld. *See* D.E. 92 at 18. The district court explained that Mr. Parsons (1) was not eligible for a Lemtrada injection, (2) received all medications listed on the Jail Medication Administration record as prescribed, and (3) conceded that the only

---

[4] Mr. Parsons does not challenge the district court's dismissal of his claim for injunctive relief as moot because he has been released from Jefferson County Jail. He has therefore abandoned any challenge to this aspect of the district court's order. *See Holland v. Gee*, 677 F.3d 1047, 1066 (11th Cir. 2012) (explaining that issues not raised in the initial brief are abandoned).

grievance he filed during his 2018 incarceration contained no mention that he was not receiving his medications. *Id.* at 18–19.

The district court committed no error in concluding that Mr. Parsons failed to establish that he did not receive his multiple sclerosis medication during his 2018 incarceration. As the district court observed, there was no dispute that ACH had subjective knowledge of Mr. Parsons' multiple sclerosis and the risk of withholding his medication. *See id.* at 18. The undisputed evidence in the record, which Mr. Parsons does not contest on appeal, however, demonstrates that he failed to establish that any necessary medication was withheld.

First, Mr. Parsons' multiple sclerosis was treated with an annual Lemtrada injection. And Mr. Parsons conceded that he had received his last injection in September 2017 and he was not eligible for a new Lemtrada injection until September 2018—two months after he was released from the jail. *See* D.E. 71-1 at 23, D.E. 77 ¶ 6, D.E. 85 ¶ 6, D.E. 86 ¶ 3.

Second, Mr. Parsons' multiple sclerosis was treated, per Dr. Pritchett's notes, with anti-inflammatory medications such as ibuprofen. Mr. Parsons testified that he received Tylenol "here and there" during his incarceration. *See* D.E. 71-1 at 13.

Third, according to the Jail Medication Administration Record, Mr. Parsons received all the medications he was prescribed by Dr. Pritchett, including a medication (Prednisone) for his multiple sclerosis. *See* D.E. 70-6, D.E. 70-7. Indeed, Mr. Parsons admitted that his only grievance filed during his 2018 incarceration did not

contain any references to any issues related to the withholding of his multiple sclerosis medication. *See* D.E. 71-1 at 16.

Viewing the evidence in the light most favorable to Mr. Parsons, he failed to establish that ACH and Sheriff Pettway were deliberately indifferent to his medical needs by withholding his necessary medications during his incarceration in 2018. Accordingly, the district court did not err in granting summary judgment in favor of the defendants on Mr. Parsons' claim based on his 2018 incarceration.

**2**

As to Mr. Parsons' 2019 incarceration, the district court concluded that Mr. Parsons was unable to prove an essential element of his claim because during his deposition he "unambiguously disclaim[ed] any claim for damages during his 2019 incarceration." D.E. 92 at 15. The district court explained that Mr. Parsons answered "no" when he was asked during his deposition if he was "alleging any damages occurred while [he was] in [jail] during the second incarceration?" *Id*. (quoting D.E. 71-1 at 19). Thus, the district court concluded that because Mr. Parsons was not claiming damages for his 2019 incarceration, he was unable to prove an essential element of his § 1983 claim. *See id*. at 16.

A claim under § 1983 "requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993) (quotation marks omitted). As a result, § 1983 "focuses our inquiry on whether an

official's acts or omissions were the cause—not merely a contributing factor—of the constitutionally infirm condition." *Id.*

Common law tort principles of damages and causation apply in the § 1983 context. *See Jackson v. Sauls*, 206 F.3d 1156, 1168 (11th Cir. 2000). Thus, "[f]or damages to be proximately caused by a constitutional tort, a plaintiff must show that, except for that constitutional tort, such injuries and damages would not have occurred and further that such injuries and damages were the reasonably foreseeable consequences of the tortious acts or omissions in issue." *Id.*

The district court did not err in granting ACH's and Sheriff Pettway's motions for summary judgment to the extent that Mr. Parsons' claims for damages were premised on conduct that occurred during his second incarceration in 2019. Although Mr. Parsons filed two grievances stating that he was not receiving his medication, *see* D.E. 71-1 at 128, 133, he testified during his deposition that he was not alleging any damages from the period of his second incarceration in 2019, *see id.* at 19. We agree with the district court that this concession was fatal to Mr. Parsons' claims for damages during his 2019 incarceration.

Mr. Parsons argues that the district court went "too far" in concluding that he abandoned his damages claim. *See* Appellant's Br. at 23. According to Mr. Parsons, the district court erred in interpreting his deposition testimony because he "did not literally say that he had no 'damages' during his confinement in 2019." *Id.* at 18. Mr. Parsons claims instead that "he said he was not alleging

that he was damaged in 2019" and that he "testified that he considered both periods of incarceration to have been all the same to him." *Id*. Thus, Mr. Parsons claims that the district court failed to draw all reasonable inferences in his favor. *See id*. We disagree with Mr. Parsons' argument.

The district court did not make an erroneous inference, as Mr. Parsons contends. *Id*. at 22. Rather, the district court relied on Mr. Parsons' deposition testimony in which he said, as he concedes on appeal, that "he was not alleging that he was damaged in 2019." *Id*. *See also* D.E. 171-1 at 19 (Q: "And did you have any – are you alleging – it's not brought up in your Complaint about the second incarceration, so are you alleging any damages occurred while you were in there during the second incarceration?" A: "No."). This testimony, even when viewed in the light most favorable to Mr. Parsons, establishes that he failed to prove an essential element of his claim—an injury proximately caused by a constitutional tort. Without any allegation or evidence that he suffered any damages caused by the defendants' alleged constitutional violation during his 2019 incarceration, Mr. Parsons' § 1983 claim fails.

Mr. Parsons tries to minimize the significance of his deposition testimony by claiming that he is a "layperson" who did not understand the legal significance of the word damages. *See* Appellant's Reply Br. at 6. Mr. Parsons' reliance on his status as a "layperson" is unpersuasive because when he was asked the question about his damages during his incarceration in 2019, he did not ask for any clarification and his attorney did not raise any objection.

*See* D.E. 71-1 at 19.  His testimony was clear and unequivocal—he was not alleging any damages occurred during his second incarceration.  *See id*.

Mr. Parsons' attempt to split hairs about his deposition testimony, without pointing to any evidence directly contradicting that testimony, fails to create a genuine issue of material fact as to his damages or injuries caused by the defendants' withholding of his medications during his second incarceration in 2019.  Although Mr. Parsons claims that he also "suffered pain caused by the lack of medication," his reference to having suffered pain is insufficient to create a genuine issue of material fact.  Appellant's Br. at 18.  During his 100-page deposition the word "pain" was only mentioned once.  *See* D.E. 71-1 at 18.  *See also Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328–29 (11th Cir. 2020) ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion.") (quoting *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam)).

Additionally, none of the two declarations Mr. Parsons submitted in opposition to the defendants' motions for summary judgment—one of which was his own—contradicted the concession he made during his deposition.  *See* D.E. 83-1, D.E. 83-2.  In fact, Mr. Parsons' declaration is completely silent regarding the damages or injuries he suffered as a result of the defendants' alleged constitutional violation of withholding his multiple sclerosis medicine in 2019.  *See* D.E. 83-2.  Consequently, Mr. Parsons' vague and

conclusory reference to pain is insufficient to defeat summary judgment. *See Whitehead*, 979 F.3d at 1328–29.[5]

Finally, Mr. Parsons relies on a Hail Mary to avoid the consequence of the concession he made during his deposition. He claims that the defendants did not assert "abandonment" as a ground for summary judgment, but that argument fails as well. Appellant's Br. at 23.

According to Mr. Parsons, "a ground that no one urged in support of summary judgment is not a ground that can support summary judgment." Appellant's Reply Br. at 8. This argument lacks merit. The district court explicitly stated in its order that "Defendants allege that in Mr. Parsons's deposition, he abandoned any claims relating to his 2019 incarceration." D.E. 92 at 10 (citing D.E. 76 ¶ 3, D.E. 77 ¶ 3). Sheriff Pettway's summary of the undisputed facts specifically referenced Mr. Parsons' deposition testimony where he disclaimed having suffered any damages during his 2019 incarceration. *See* D.E. 76 ¶ 3. And ACH's reply in support of its motion for summary judgment argued that "[t]he Complaint makes no mention of the 2019 incarceration, or any claims related to it . . . Parsons testified that he has no claim for damages related to his 2019 incarceration." D.E. 87 at 14. Thus, Mr. Parsons'

---

[5] Although Mr. Parsons asserted in his statement of undisputed facts submitted in his opposition to the defendants' motion for summary judgment that without medication his multiple sclerosis "causes him to have pain," that statement was *never* made in Mr. Parsons' declaration. *Compare* D.E. 84 at 4 ¶ 1, *with* D.E. 83-2 at 2.

argument that the district court "*sua sponte* concluded that [he] had *abandoned* his claim for the mistreatment he endured in 2019" is inaccurate. *See* Appellant's Reply Br. at 6 (emphasis in the original).[6]

Accordingly, the district court did not err in granting summary judgment in favor of ACH and Sheriff Pettway.

**B**

We next consider the district court's ruling on supervisory liability as to ACH and Sheriff Pettway. The district court ruled that ACH and Sheriff Pettway were both entitled to summary judgment because Mr. Parsons had failed to establish any underlying violation of a constitutional right. *See* D.E. 92 at 19–20 (citing *Lyons v. City of Abbeville, Alabama*, No. 21-13610, 2022 WL 3703821, at *3 (11th Cir. Aug. 26, 2022)). As such, the district court concluded that Mr. Parsons could not maintain any claim of supervisory liability under § 1983 against ACH and Sheriff Pettway. *See id.*

Mr. Parsons does not raise any argument challenging this part of the district court's order. Instead, he argues that "[t]he district court erred by holding that Sheriff Pettway was entitled to

---

[6] Even if we assume that the defendants did not raise "abandonment" as an argument before the district court, Mr. Parsons acknowledges, as he must, that "this Court can affirm on any grounds that would support the judgment of the court below." Appellant's Reply Br. at 8. *See Roy v. Ivy*, 53 F.4th 1338, 1346 (11th Cir. 2022) ("We may affirm summary judgment on any ground supported by the record."). Considering that our rationale for affirming the district court's summary judgment order with respect to Mr. Parsons' damages claims is not based on "abandonment," but on other grounds supported by the record, Mr. Parsons' argument can be rejected on this basis alone.

qualified immunity." Appellant's Br. at 23. Mr. Parsons' argument, however, misses the mark by a wide margin. The district court did not reach qualified immunity given that it found that no constitutional violation had occurred. Thus, considering that Mr. Parsons essentially failed to raise any argument challenging the supervisory liability portion of the district court's order, he has abandoned this issue. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680-81 (11th Cir. 2014) ("A party can abandon an issue on appeal by failing to 'plainly and prominently' address it in his opening brief.").

Nevertheless, the district court did not err in concluding that neither ACH nor Sheriff Pettway was subject to supervisory liability under § 1983 as a matter of law. Mr. Parsons simply failed to establish any underlying violation of a constitutional right by a supervisee. *See Paez v. Mulvey*, 915 F.3d 1276, 1291 (11th Cir. 2019) ("[T]here can be no supervisory liability . . . if there was no underlying constitutional violation.") (internal quotation marks omitted) (quoting *Gish*, 516 F.3d at 955). *See also Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) ("[A] supervisor may not be held liable under section 1983 unless the supervised official committed an underlying violation of a constitutional right.").

## IV

We affirm the district court's order granting summary judgment in favor of ACH and Sheriff Pettway.

**AFFIRMED.**